UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

NEUROLOGICAL SURGERY, P.C.,
MICHAEL H. BRISMAN, M.D., and
JEFFREY A. BROWN, M.D.,
      Plaintiffs,

     - vs -                                     Case No.: 2:15-cv-4191
                                              (DRH)(AKT)

NORTHROP GRUMMAN SYSTEMS
CORPORATION,
      Defendant.
_____

HURLEY, Senior District Judge:


### MEMORANDUM & ORDER
### ON DEFENDANT'S MOTION TO DISMISS

### I. INTRODUCTION

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and (b)(6), Defendant Northrop

Grumman Systems Corporation ("NG-Systems") moves this Court to dismiss, in its entirety and

with prejudice, the complaint filed against it by Plaintiffs Neurological Surgery, P.C.

("Neurological Surgery"), Michael H. Brisman, M.D., and Jeffrey A. Brown, M.D. (hereafter and

together with Neurological Surgery, the "Providers"). (*See* ECF No. 20.) Generally, the

complaint seeks payments from NG-Systems, pursuant to the Employee Retirement Income

Security Act ("ERISA") and various New York state laws, for services rendered by the Providers

– a neurosurgery practice and two of its doctors, which are "out-of-network" healthcare providers

– to NG-Systems' employees and/or their beneficiaries, which the Providers allege have not been

paid or have been paid at "dramatically reduced rate[s]". (*See* ECF No. 8; hereafter, the

"Complaint".)  The Providers oppose NG-Systems' motion to dismiss.  (*See* ECF No. 20-9.)  For the reasons that follow, NG-Systems' motion to dismiss is granted.

## II. BACKGROUND[1]

### A.  Factual Background

The Providers are a private neurosurgery medical practice and two of its physicians. They have several office on Long Island, including in Queens, and in Manhattan.  NG-Systems is a leading global security company.  Through certain benefit plans funded and administered by NG-Systems (hereafter, "Plans"), it provides healthcare benefits to its employees and certain of their beneficiaries.  NG-Systems contracts with Empire[2] to provide those healthcare benefits to persons covered by the Plans.  Thus, Empire acts as NG-Systems' agent.

The Providers generally allege they are out-of-plan providers who rendered medically necessary services to (1) "MM", an employee of NG-Systems and to (2) "JS", an NG-Systems employee beneficiary (hereafter, the "Patients"), both of whom were covered at all relevant times by the Plans.  Under the Plans, the Patients may receive medical services from out-of-network providers, who are entitled to payments for those services.  Despite the Patients providing the Providers with authorizations and assignments to receive payments directly from NG-Systems,

---

[1]  Unless otherwise noted, the information for this "Background" section is drawn from the allegations in the Providers' Complaint, which are assumed to be true for the purposes of deciding NG-Systems' motion to dismiss.  *See generally*, *infra*, Part III(B) (discussing the Rule 12(b)(6) motion to dismiss standard).

[2]  Empire is not a party to this action.  Other than a generic reference to "Empire" as NG-Systems' agent, the Providers fail to further define or identify Empire.  In the context of this case, the Court assumes the Providers are referring to Empire Blue Cross Blue Shield.

and the Providers attempting to enter into a meaningful dialog with NG-Systems and Empire regarding prompt and proper payment for the outstanding claims,[3] which have either produced vague promises of payment or fallen on deaf ears, the Providers assert they were either not paid or paid substantially less than was owed them for services rendered to the Patients.  The Court addresses those claims more specifically, below.

1. Claims related to medical services provided to MM

a. The December 10th claim (*See* Complaint at ¶¶50-57.)

On December 10, 2013, the Providers rendered medically necessary health services, which were covered under the Plans, to MM.  MM executed documents assigning Providers all rights to receive reimbursement from Empire for the health care services provided.  The Providers billed Empire $105,900 for the medical services rendered to MM, which "[p]ursuant to the terms of the relevant [NG-Systems] health plan documents and agreements, Empire . . . was obligated to reimburse to [the Providers] in full – or at the very least at a usual, customary, or reasonable rate . . . ."  (Complaint at ¶53.)  The Providers allege they "communicated" with NG-Systems and Empire "numerous times – including on 1/28/14, 2/27/14, 5/2/14, 5/12/14, 6/18/14, 7/31/14, 11/18/14, 11/25/14, and 12/16/14, and 2/9/15, 3/13/15, 3/14/15 – about the status of the pending claims."  (Complaint at ¶54.)  However, the Providers have not received any payments on their $105,900 claim.  They assert that their "attempts to communicate" with Empire and NG-Systems regarding this unpaid claim "have fallen on deaf ears".  (Complaint at ¶¶56, 57.)  The Providers did not allege any attempt to appeal Empire's or NG-Systems' non-payment of the

_____

[3]  The Providers do not indicate with whom at NG-Systems and Empire they attempted to engage in meaningful dialog.

$105,900 claim.

        b.  <u>The December 13th claim</u> (*See* Complaint at ¶¶58-65.)

On December 13, 2013, the Providers provided further medically necessary health services to MM, which services were covered under the Plans. Again, MM executed documents assigning her right of reimbursement under the Plans to the Providers. The Providers billed Empire $23,000 for the December 13th services. They "communicated" with NG-Systems and Empire "numerous times – including on 1/28/14, 2/27/14, 5/2/14, 5/12/14, 6/18/14, 7/31/14, 11/18/14, and 12/16/14, and 2/9/15, 3/13/14, and 3/14/15 - about the status of the pending claim." (Complaint at ¶62.) The Providers were not paid on the claim. Therefore, in April 2015, they appealed the nonpayment, but the "appeal has gone unanswered." (Complaint at ¶64.) Thus, like their $105,900 claim, the Providers allege their "repeated attempts to communicate with [NG-Systems] and Empire about the status of [the $23,000 claim] . . . have fallen on deaf ears . . . ." (Complaint at ¶65.)

        2.  Claims related to medical services provided to JS

        a.  <u>The February 8th claim</u> (*See* Complaint at ¶¶66-72.)

On February 8, 2012, the Providers provided medically necessary health services to JS, which services were covered under the Plans. JS had executed documents assigning Providers all rights to receive reimbursement from Empire for the health care services provided. The Providers billed Empire $179,950 for the medical services rendered to JS, which "[p]ursuant to the terms of the relevant [NG-Systems] health plan documents and agreements, Empire . . . was obligated to reimburse to [the Providers] in full – or at the very least at a usual, customary, or reasonable rate . . . ." (Complaint at ¶69.) According to the Providers, they "communicated"

with NG-Systems and Empire "numerous times – including on 3/21/12, 4/2/12, 4/17/12, 4/19/12,

4/27/12, 5/4/12, 5/21/12, 6/1/12, 6/7/12, 6/11/12, 6/20/12, 6/25/12, 7/9/12, 8/6/12, and 9/14/12 –

about the status of the pending claims." (Complaint at ¶70.) However, the Providers received

only $4,350.10 from Empire for the claim. It asserts its "attempts to communicate" with Empire

and NG-Systems regarding the $179,950 claim "have fallen on deaf ears". (Complaint at ¶¶72.)

The Providers did not allege any attempts to appeal Empire's or NG-Systems' minimal payment

of the $179,950 claim.

### b. The February 12th claim (*See* Complaint at ¶¶73-79.)

On February 12, 2012, the Providers rendered further medically necessary health services

– covered under the Plans – to JS. Again, JS executed documents assigning JS's right of

reimbursement under the Plans to the Providers. The Providers billed Empire $60,000 for the

February 12th services. They "communicated" with NG-Systems and Empire "numerous times –

including on 3/4/14, 3/17/14, 4/24/14, 4/25/14, 5/1/14, and 6/11/14 – about the status of the

pending claim." (Complaint at ¶77.) The Providers were paid only $1,117.68 on this claim.

They did not allege any attempts to appeal Empire's or NG-Systems' minimal payment of the

$60,000 claim. Rather, the Providers allege their "repeated attempts to communicate with [NG-

Systems] and Empire about the status of [the $60,000 claim] . . . have fallen on deaf ears . . . ."

(Complaint at ¶79.)

### c. The July 18th claim (*See* Complaint at ¶¶80-86.)

Additionally, on July 18, 2014, the Providers provided JS with medically necessary health

services, which were covered under the Plans. As previously done, JS executed documents

assigning JS's right of reimbursement under the Plans to the Providers. The Providers billed

Empire $60,000 for the July 18th services.  They "communicated" with NG-Systems and Empire

"numerous times – including on 2/26/15, 5/1/12, 5/13/15, 6/19/15, and 9/15/15 – about the status

of the pending claim."  (Complaint at ¶77.)  The Providers were not paid any monies on this

claim.  They did not allege any attempts to appeal Empire's or NG-Systems' non-payment of the

$60,000 claim.  Instead, the Providers allege their "repeated attempts to communicate with [NG-

Systems] and Empire about the status of [the $60,000 claim] . . . have fallen on deaf ears . . . ."

(Complaint at ¶86.)

*B.  Procedural Background*

By a state-court summons dated June 11, 2015, Providers alleged NG-Systems violated

ERISA, as well state common and statutory laws, with all alleged violations being predicated

upon the Plans administered by NG-Systems for the benefit of its employees and their

beneficiaries.  (*See* ECF No. 1-3, Summons with Notice.)  On July 16, 2015, and relying on the

doctrine of complete preemption under ERISA, NG-Systems filed a Notice of Removal of the

Providers' action to this Court.  (*See* ECF No. 1, Notice of Removal.)

Thereafter, on September 17, 2015, the Providers filed their seven-count complaint.  (*See*

ECF No. 8, Complaint.)  In its first cause of action, the Providers allege NG-Systems has

violated ERISA by failing to pay them in full for the medically necessary, covered health care

services provided to the Patients.  Importantly, they state, *inter alia*:

> 101. . . . [the Providers] ha[ve] exhausted all available
> administrative remedies or appeal rights.  Additionally, further
> appeals or administrative proceedings would be futile.
> 102.  Specifically, Empire routinely denies or ignores [the
> Providers'] appeals, and all appeals and other administrative
> remedies have either been denied, or have been outstanding for
> such a long time that the only reasonable conclusion that can be

> drawn is that they are deemed denied.
>
> 103.  Additionally, . . . so many unsuccessful attempts have
> been made by [the Providers] to inquire about the status [of]
> claims, to obtain payment, and to secure a reasonable and legal
> decision on the health care claims at issue, that they [sic] only
> conclusion that can be drawn is that further administrative
> proceedings would be futile.

(Complaint at ¶¶101-103.)  Therefore, the Providers seek the benefits they have claimed, as well

as prejudgment interest.  In their second cause of action and pursuant to ERISA, the Providers

seek their attorneys fees for bringing this action.  Its remaining causes of action are state-law

based, with: the third cause of action being for breach of contracts; the fourth cause of action

being a breach of implied-in-fact contracts; the fifth cause of action being a claim of unjust

enrichment; the sixth cause of action being a violation of New York Insurance Law § 3224-a (the

"Prompt Pay Law"); and its seventh cause of action being a claim as a third-party beneficiary.

Neither of the Plans were attached to the Complaint, nor were any of the Patients' referenced

authorizations or assignments.

In response, NG-Systems filed its motion to dismiss.  (*See* ECF No.  20.)  It included

summary plan descriptions ("SPD"s) for the Plans.[4]  (*See* Sholinsky Decl. In Support of Mot.

Dismiss, ECF No. 20-4, and accompanying Ex. A (ECF No. 20-5), and Ex. B (ECF No. 20-6).)

The Plans have two levels of appeals.  (*See, e.g.*, Ex. A at 159, attached to Sholinsky Decl (ECF

No. 20-5); Ex. B at 55, attached to Sholinky Decl. (ECF No. 20-6).)

NG-Systems raises several arguments in support of its motion to dismiss.  As to the

ERISA causes of action, it contends: (1) it is not the proper party to the Providers' ERISA

---

[4]  The full SPDs are available electronically to the public at
www.benefits.northropgrumman.com.  (*See* Weissflach Decl. In Support Mot. Dismiss (ECF No.
20-2).)

claims; (2) the Providers lack statutory standing; (3) the Providers have failed to exhaust their administrative remedies; (4) the ERISA claims are time-barred; (5) the Providers fail to state a plausible claim for benefits under ERISA; and (6) claims for attorneys' fees is a remedy, not a substantive claim. Regarding the Providers' state-law claims, NG-Systems asserts that ERISA preempts them all. Alternatively, it argues the Providers fail to state claims: for breach of contracts; for breach of implied-in-fact contracts; for unjust enrichment; under New York State's Prompt Pay Law; of being a third-party beneficiary.

The Providers oppose the dismissal motion on several basis. As to their ERISA causes of action, the Providers argue: (1) that to the extent NG-Systems is not the Plan Administrator, the Providers should be permitted to amend their complaint; (2) Second Circuit case law makes clear "that a healthcare provider has standing to bring a claim if a beneficiary has properly assigned it in exchange for health care," *Simon v. Gen. Elec. Co.*, 263 F.3d 176, 177-78 (2d Cir. 2001)(further citation omitted); (3) as they have "amply" alleged in their Complaint, it would be futile to exhaust their administrative remedies, and they never saw the Plans (*see* Providers' Opp'n at 8); (4) NG-Systems' time-barred argument is an affirmative defense, not a basis for dismissal; and (5) under the Supreme Court's *Twombly/Iqbal* teachings, they have properly pled a claim for relief under ERISA. As to their state law causes of action, the Providers contend: (1) their breach of contract claim is properly pled as an alternative cause of action to their ERISA claim; (2) their causes of action for breach of implied contract and unjust enrichment are claims pled in the alternative to their breach of contract claim, which is permissible; (3) the Court should wait until after full discovery to decide whether the Providers state a claim under the New York Prompt Pay Law; and (4) they have properly pled all the elements of a third-party

beneficiary claim.  Importantly, the Providers have not indicated they have pursued the Plans' appeal procedures now that they have been provided the SPDs for the Plans.

NG-Systems filed a reply brief, reiterating its arguments for dismissal.  (*See* ECF No. 20-10.)

III.  DISCUSSION

NG-Systems presents two basis for dismissing the Complaint: lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), and failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6).  As to the Providers' ERISA causes of action, the Court shall focus on NG-Systems' failure-to-exhaust argument.  Regarding the Providers' state law causes of action, the Court shall focus on NG-Systems' preemption argument.

### A.  Rule 12(b)(1) Motion to Dismiss Standard

A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.  The standard for reviewing a [Rule] 12(b)(1) motion to dismiss is essentially identical to the [Rule] 12(b)(6) standard set forth below, except that a plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.  In adjudicating a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the court may consider matters outside the pleadings.

*JTE Enters., Inc. v. Cuomo*, 2 F. Supp.3d 333, 337-38 (E.D.N.Y. 2014) (internal quotation marks omitted; citations to *Makarova v. United States*, 201 F.3d 11, 113 (2d Cir. 2000) omitted; brackets added); *see also Harrison v. New York*, 95 F. Supp.3d 293, 311 (E.D.N.Y. 2015)(citing, *inter alia*, *Makarova*).

*B. Rule 12(b)(6) Motion to Dismiss Standard*

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted).

The plausibility standard is guided by two principles. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *accord Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009). First, the principle that a court must accept all allegations as true does not apply to legal conclusions. Thus, "threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. Therefore, a plaintiff must provide facts which are sufficient to allow each named defendant to have a fair understanding about what it is the plaintiff is complaining and as to whether there is a legal basis for recovery. *See Twombly*, 550 U.S. at 555.

Second, only complaints that state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss. *Iqbal,* 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that defendant acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line' between possibility and plausibility of 'entitlement to relief.' " *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted); *see In re Elevator*

*Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007). Determining whether a complaint plausibly

states a claim for relief is "a context specific task that requires the reviewing court to draw on its

judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *accord Harris*, 572 F.3d at 72.

Further, "[i]n making its Rule 12(b)(6) determinations, the court 'may consider any

written instrument attached to the complain, statements or documents incorporated into the

complaint by reference . . . and documents possessed by or known to the plaintiff and upon which

[he] relied in bringing the suit.' " *Live Face on Web, LLC v. Five Boro Mold Specialist Inc., et

al.*, No. 15-cv-4779 (LTS)(SN), 2016 WL 1717218, at *2 (S.D.N.Y. Apr. 28, 2016) (quoting

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)); *see also Steger v.

Delta Airlines, Inc.*, 382 F. Supp.2d 382, 385 (E.D.N.Y. 2005) (in ERISA case where plan is

directly referenced in the complaint, not attached to the complaint, but annexed to the Rule

12(b)(6) motion to dismiss, the Court will consider the plan in ruling on the motion).

C.  *The Providers' ERISA Claims & Exhaustion of Administrative Remedies*

"ERISA itself does not contain an exhaustion requirement; the requirement is instead

judge-made." *Kirkendall v. Halliburton, Inc.*, 707 F.3d 173, 170 (2d Cir. 2013)(citing *Paese v.

Hartford Life & Accident Ins. Co.*, 449 F.3d 435, 445 (2d Cir. 2006)). In turn, this judge-made

requirement is based on the Second Circuit's recognition of "'the firmly established federal

policy favoring exhaustion of administrative remedies in ERISA cases,'" *Kennedy v. Empire

Blue Cross and Blue Shield*, 989 F.2d 588,594 (2d Cir. 1993) (quoting *Alfarone v. Bernie Wolff

Constr.*, 788 F.2d 76, 79 (2d Cir.), *cert. denied*, 479 U.S. 915 (1986)); *see also Diamond v. Local

807 Labor Mgmt. Pens. Fund*, 595 Fed. App'x 22, 24 (2d Cir. 2014)(further citation omitted),

which

fulfill[s] the following purposes:

> to uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal courts; to provide a sufficiently clear record of administrative action if litigation should ensue; to assure that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard, not de novo; to help reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claim settlement; and to minimize the costs of claims settlement for all concerned.

*Kirkendall*, 707 F.3d at 179 (block quoting *Paese*, 449 F.3d at 445; alterations in *Paese* omitted; further citations omitted). However, "exhaustion in the context of ERISA requires only those administrative appeals [procedures] provided for in the relevant plan or policy." *Kennedy*, 989 F.2d at 594 (citation omitted); *see also Bohl v. Constr. & Gen. Laborers Local Union 190*, 1:11-cv-0699, 2014 WL 1312047, *4 (N.D.N.Y. Mar. 31, 2014) (quoting *Kennedy*). Where an ERISA claimant "fails to allege that he or she has exhausted administrative remedies, the claim must be dismissed." *Greifenberger v. Hartford Life Ins. Co.*, No. 03-cv-3238, 2003 WL 22990093, at *4 (S.D.N.Y. Dec. 18, 2003), *aff'd*, 131 Fed. App'x 756, 758 (2d Cir. 2005).

"While the ERISA exhaustion requirement is not jurisdictional, neither is it an insignificant procedural hurdle," *Am. Med. Ass'n v. United HealthCare Corp.*, No. 00-cv-2800, 2007 WL 1771498, at *5 (S.D.N.Y. June 18, 2007).

> [T]he Second Circuit explained that an ERISA claimant may be excused from exhaustion where the administrative process would be "futile." However, that **futility exception is not applied lightly**. "[F]utility . . . excuse[s] an ERISA plaintiff's failure to exhaust only '[w]here claimants make *a clear and positive showing* that pursuing available administrative remedies would be futile.' " *Davenport v. Harry N. Abrams, Inc.*, 249 F.3d 130, 133 (2d Cir. 2001) (quoting *Kennedy*, 989 F.2d at 594); *see also MacLennan v. Providen Life & Accident Ins. Co.*, 676 F. Supp.2d 57, 66 (D. Conn. Dec. 15, 2009) (a "'plaintiff invoking this [futility] doctrine

has a heavy burden'" (quoting *Cole v. Travelers Ins. Co.*, 208 F. Supp.2d 248, 262 (D. Conn. 2002)). *Davenport* held that such a "clear and positive showing" requires an "unambiguous application for benefits and a formal or informal administrative decision denying benefits [such that] it is clear that seeking further administrative review of the decision would be futile." *Id.*

*Zupa v. General Electric Co.*, No. 3:16-cv-0217, 2016 WL 3976544, at *2 (D. Conn. July 22, 2016)(brackets in *Zupa*; boldface added).

In the instant case, the Providers' Complaint fails to establish exhaustion of remedies or the futility of exhaustion. Generally, the Court finds the Providers' allegations that they have "exhausted all available administrative remedies or appeal rights" (Complaint at ¶101), that Empire "routinely denies or ignores [the Providers'] appeals . . . or [they] have been outstanding for such a long time that the only reasonable conclusion that can be drawn is that they are deemed denied" (*id.* at ¶ 102); and that "so many unsuccessful attempts have been made . . . to inquire about the status of claims, to obtain payment, and to secure a reasonable and legal decision on the . . . claims at issue that they [sic] only conclusion that can be drawn is that further administrative proceedings would be futile" (*id.* at ¶ 103), all to be mere conclusory statements which are not supported by plausible factual allegations. More specifically, as to each claim, the Court finds the following.

1.a. <u>MM's December 10th Claim</u>: Other than their allegation of numerous communications with NG-Systems and Empire, the Providers do not provide any context for or content from the communications. Further, even reading the Complaint in the light most favorable to the Providers, *i.e.*, that the non-payment on this claim – after the numerous communications – is tantamount to a denial of those claims, the Providers' characterization of those communications falling on deaf ears does not recast NG-Systems' or Empire's non-

payment into "a formal or informal administrative decision denying benefits [such that] it is clear that seeking further administrative review of the decision would be futile." *Davenport*, 249 F.3d at 133 (further citation omitted).

Even assuming nonpayment to be an informal denial of the claim, significantly, the Providers' do not allege any appeal of such denial of the December 10th claim. Not having copies of the Plans before the commencement of this litigation does not relieve the Providers of seeking an appeal of the denial of the December 10th claim since "the Second Circuit has held that a plaintiff cannot rely on his ignorance of the claim procedure when he has been informed of that procedure through litigation (and has continued to fail to satisfy the exhaustion requirement)." *Bohl*, 2014 WL 1312047, *5 (citing *Davenport*, 249 F.3d at 134); *see also Greirenberger*, 2003 WL 22990093, at *4, *aff'd*, 131 Fed. App'x 756 (2d Cir. 2005) ("a claimant is required to exhaust available administrative appeal procedures 'even if she [i]s ignorant of the proper claim procedure'" (quoting *Davenport*, 249 F.3d at 134)). Thus, in the absence of appealing the alleged denial of the December 10th claim, the Providers have failed to demonstrate exhaustion of their administrative remedies and, notwithstanding their "deaf ears" argument, have failed to make a "clear and positive showing" that following the Plans' appeal procedure would be futile.

1.b. <u>MM's December 13th Claim</u>: The facts regarding MM's December 13th claim are similar to those regarding her December 10th claim except that the Providers filed an appeal of the nonpayment of this claim. That appeal has gone unanswered, which the Providers assert is equivalent to a denial. Again, the Providers assert the appeal has fallen on deaf ears, thereby purportedly relieving them of further pursuing the appeal process.

Again, reading the Complaint regarding the December 13th claim in the light most favorable to the Providers, the Court finds they have not sufficiently alleged facts which plausibly demonstrate exhaustion of remedies. Nor do their conclusory statements characterizing their attempts to communicate with NG-Systems and Empire as falling on deaf ears clearly and positively show that following the Plans' appeals procedures, now known to them, would be futile.

2.a. <u>JS's February 8th Claim</u>: JS's claims are similar to those of MM's. The Providers communicated numerous times with NG-Systems and Empire regarding JS's February 8th claim (for $179,950), but to little avail. They received only $4,350.10 from Empire on the February 8th claim. Yet, they did not appeal the minimal payment, instead – and, again – asserting its attempts to communicate with NG-Systems and Empire fell on deaf ears.

Reading the Providers' complaint in the light most favorable to them, the Court finds they have not alleged plausible facts that they have exhausted their administrative remedies. Nor does their bald conclusion that their communications with NG-Systems and Empire have "fallen on deaf ears" excuse the Providers from following the appeal process outlined in the Plans. Such an assertion falls short of a clear and positive showing that pursuing available administrative remedies would be futile. *See Kirendall*, 707 F.3d at 179; *see also Greifenberger*, 131 Fed. App'x at 759 (allegations of initial denial of benefit claim is "insufficient to establish futility, particularly where a plaintiff has made no attempt to file an administrative claim *or to notify the insurer that she disputes its denial of benefits*" (emphasis added)).

2.b. <u>JS's February 12th Claim</u>: The situation with JS's February 12th claim mirrors JS's February 8th claim: *i.e.*, the Providers communicated numerous times with NG-Systems and

Empire regarding JS's February 12th claim (for $60,000), but to little avail; they received only $1,117.68 from Empire on the February 12th claim; and they did not appeal the minimal payment, instead – and, again – asserting its attempts to communicate with NG-Systems and Empire fell on deaf ears. Hence, regarding this claim, the Court makes the same finding for the same reasons: the Providers have not sufficient pled exhaustion of remedies to state a plausible cause of action for violation of ERISA, and they are not excused from that requirement since they have not clearly and positively shown futility.

      2.c. <u>JS's July 18th Claim</u>: The July 18th claim is also based on the same scenario: provision of medically necessary services to JS; JS's assignment of rights to reimbursement to the Providers, the Providers numerous communications with NG-Systems and Empire regarding the claim, but without an explanation of what those communications entailed; non-payment on the claim; no appeal by the Providers regarding the non-payment; and the assertion by the Providers that their repeated attempts to communicate with NG-Systems and Empire fell on deaf ears. Thus, the Court is compelled to make the same findings regarding the July 18th claim. The Providers have not sufficiently pled exhaustion of remedies such that they have stated a plausible cause of action under ERISA. Nor have the Providers plausibly pled sufficient facts to show clearly and positively that further attempts to follow the Plans' appeal processes would be futile, thereby excusing them from the exhaustion requirement.

* * *

      Accordingly, as to each of the five claims for which the Providers seek payments, they have failed to exhaust their administrative remedies as required under the Plans. Furthermore, they have failed to clearly and positively demonstrate futility in pursuing those remedies.

Therefore, the Providers have failed to sufficiently plead plausible ERISA causes of action, warranting their dismissal.  Having reached this conclusion, the Court need not address other arguments in support of, or in opposition to, dismissal of the ERISA causes of action.

   *D.  The Providers' State Law Claims & Preemption*

   In order to determine whether the Providers' state law claims are completely preempted by ERISA, the Court must engage in the Supreme Court's two-pronged *Davila* analysis:

> [C]laims are completely preempted by ERISA if they are (i) brought by "an individual [who] at some point in time, could have brought his claim under ERISA § 502(a)(1)(B),[5]" and (ii) under circumstances in which "there is no other independent legal duty that is implicated by a defendant's actions".

*Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 328 (2d Cir. 2011) (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (quoting 29 U.S.C. § 1001(b)); alteration in original)); *see also Star Multi Care Services, Inc. v. Empire Blue Cross Blue Shield, et al.*, 6 F. Supp.3d 275, 284-86 (E.D.N.Y. 2014).  The Second Circuit has clarified that *Davila*'s first prong requires a two-part showing:

> (a) [the plaintiff] is the type of party who can bring a claim pursuant to § 502(a)(1)(B) of ERISA; and (b) the actual claim asserted can be construed as a colorable claim for benefits pursuant to § 502(a)(1)(B).

*See Arditi v. Lighthouse Intern.*, 676 F.3d 294, 299 (2d Cir. 2012) (citing *Montefiore*, 642 F.3d at 328).  "Where both of *Davila*'s factors are satisfied – including the two sub-parts to *Davila*'s first prong – ERISA will preempt the sate law claim."  *Star Mutli*, 6 F. Supp.3d at 286; *see also id.* at

---

⁵ ERISA's enforcement provision is § 502(a)(1)(B), codified at 29 U.S.C. § 1132; it provides participants and beneficiaries a cause of action against plans and plan administrators for the denial of benefits or rights under ERISA plans.

286-88.

At the outset, there is no apparent dispute that the subject Plans are ERISA plans (*see* Complaint at ¶5; *see also* Ex. A, attached to Sholinsky Decl (ECF No. 20-5); Ex. B, attached to Sholinky Decl. (ECF No. 20-6)). Moreover, in the context of this dismissal motion, it is assumed to be true that the Patients assigned their rights to reimbursement under the Plans to the Providers (*see* Complaint at ¶¶30, 52, 60, 68, 75, & 82). With that fact and assumed allegation, the Court turns to the two-pronged *Davila* analysis.

### 1.a.  Prong One, Sub-part (a): Party Who Can Bring Claim

The first sub-part of prong one is satisfied since the Providers are the type of party who can bring an ERISA § 502(a)(1)(B) claim because "[a] healthcare provider may stand in place of the beneficiary to pursue an EIRSA claim if the beneficiary has assigned his or her rights to the provider in exchange for medical care," *Star Multi*, 6 F. Supp.3d at 286 (quoting *Neuroaxis Neurosurgical Assocs., PC v. Cigna Healthcare of N.Y., Inc.*, No. 11-cv-8517, 2012 WL 4840807, at *3 (S.D.N.Y. Oct. 4, 2012)), which is what has occurred in this case.

### 1.b.  Prong One, Sub-part (b): Colorable Claim for Benefits

A fair reading of the Providers' Complaint compels the conclusion that their disputes with NG-Systems emanate from obligations derived from the Plans, and not other sources, *to wit*: the Patients' assignments of their rights to reimbursement in exchange for the Providers rendering medically necessary health services. *See Montefiore*, 642 F.3d at 331 (where complaint "implicate[s] coverage and benefits established by the terms of the ERISA [Plans]," the second subpart of *Davila*'s prong one analysis is satisfied); *Ciampa v. Oxford Health Ins., Inc.*, No. 15-cv-6451, 2016 WL 7392014, * 2 (E.D.N.Y. Dec. 21, 2016)(quoting *Montefiore*, 642

F.3d at 325). That is, the five claims are "colorable claims" under ERISA "to recover benefits due" under the Plans. 29 U.S.C. § 1132(a)(1)(B); *see also Star Multi*, 6 F. Supp.3d at 287. Hence, the Court finds the second sub-part of *Davila*'s first prong is met.

### 2. Prong Two: Other, Independent Basis

In making a *Davila* prong two determination, "[t]he Second Circuit has made clear that the 'key words' in conducting this analysis are 'other' and 'independent'." *Star Multi*, 6 F. Supp.3d at 288 (citing *Montefiore*, 642 F.3d at 332 (internal quotation marks omitted in *Star Multi*)). Thus, where a claim is inextricably intertwined with the interpretation of plan coverage and benefits, no other, independent cause of action will be had. *See Star Multi*, 6 F. Supp.3d at 289 (block quoting *Montefiore*, 642 F.3d at 322).

#### a. The Providers' State Law Breach of Contracts Cause of Action

In their Complaint, the Providers assert that it is "[t]hrough the assignments of benefits . . . [that] Neurological Surgery obtained the right to enforce the [Plans]," (Complaint at ¶111), that the Plans obligated NG-Systems "to make reimbursements for the . . . services provided to" the Patients (*id.* at ¶112), and that NG-Systems "breached its obligations under these [Plans] by failing to timely and properly pay Neurological Surgery for the medically necessary, covered services . . . " (*Id.* at ¶ 115.) Read in the light most favorable to the Providers, the Complaint does not state any other, independent cause of action against NG-Systems. Rather, the Providers' breach of contracts claim clearing are inextricably intertwined with the Plans, and their rights, if any, to payment under those Plans.

#### b. The Providers' Other State Common Law Causes of Action

A fair reading of the Providers' Complaint supports the finding that the Providers' other

state common law claims are no more than alternative causes of action to collect medical benefits pursuant to the Plans. Since the Court has found the breach-of-contracts cause of action is inextricably intertwined with the Plans, and not based on an other, independent ground, it likewise makes the same finding regarding the Providers' alternative causes of action.

c. The Providers' New York Prompt Payment Law Cause of Action

At least two sister courts within the Second Circuit have ruled that a plaintiff's attempt to circumvent ERISA by stating a claim for recovery under New York's Prompt Payment Law are preempted by ERISA. *See Weisenthal v. United Health Care Ins. Co.*, Nos. 07-cv-1175, 07-cv-0945, 2007 WL 4292039, at *7 (S.D.N.Y. Nov. 29, 2007); *Berry v. MVP health Plan, Inc.*, No. 1:06-cv-120, 2006 WL 4401478 (N.D.N.Y. Sept. 30, 2006).; *cf., e.g., Ciampa*, 2016 WL 7392014, * 2 (claims under NY Gen. Bus. Law statute preempted by ERISA because that claim raised colorable claim for benefits which directly concerned issue of benefits under ERISA § 502(a)(1)(B), ERISA's enforcement provision). In the present case, this Court agrees. As in *Berry*:

> Here, allowing [the Providers] to proceed with their state-law [cause of action] would pose an obstacle to the purposes and objectives of Congress, because [the Providers] are attempting to utilize [the New York Prompt Pay Law] to vindicate their rights under the . . . ERISA-governed [P]lans. *Although [the Providers] cite New York statutory law in the complaint, the factual allegations reveal the true motive of this action, to wit, to recover benefits for medical services to which [the Providers], as assignees, believe they are entitled under the terms of the [P]lans.* Thus,[the Providers] are seeking to use [the New York Prompt Pay Law] as [a] "separate vehicle to assert a claim for benefits outside of . . . ERISA's remedial scheme." *Davila*, 542 U.S. at 217-18.

*Berry*, 2006 WL 4401478, at *5 (emphasis added; internal quotations and citations omitted). In other words, there is no other, independent basis upon which the Providers can rest their New

York Prompt Pay Law claim.  Thus, the second prong of the *Davila* analysis is satisfied.

* * *

In sum, having read the Providers' state law causes of action in the light most favorable to them, the Court finds both prongs of the *Davila* analysis are satisfied.  That finding warrants the conclusion that all of the Providers' state law claims are completely preempted by ERISA. Having reached that conclusion, the Court declines to address other arguments in support of, or in opposition to, dismissal of the state law causes of action.

IV.  CONCLUSION

Accordingly, **IT IS ORDERED** that NG-Systems' Motion to Dismiss is GRANTED pursuant to Federal Rule of Civil Procedure 12(b)(6); and

**IT IS FURTHER ORDERED** that the Providers' Complaint is dismissed, with their ERISA claims being dismissed without prejudice to refile upon exhaustion of remedies, and their state law claims being dismissed with prejudice.

Dated this 26th day of January 2017 at Central Islip, New York.

_____/s/_____
Denis R. Hurley
Senior District Court Judge, E.D.N.Y.